## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEVIN DORSEY,                          :
                                       :
      Plaintiff,                 :
                                       :
    v.                               :     CIVIL ACTION NO.
                                       :     1:05-CV-3151-RWS
ATLANTA COMMUNITY FOOD                 :
BANK,                                  :
                                       :
      Defendant.                 :

### ORDER

Now before the Court are Defendant's Motion for Summary Judgment [60]; Defendant's Motion for Oral Argument [85]; and Defendant's Motion to Strike [90].  After considering the entire record, the Court enters the following Order.

### Background

Defendant Atlanta Community Food Bank is a non-profit organization which provides food, household products, and other donated supplies to low income non-profit organizations known as partners.  (Def.'s Stmt. of Mat. Facts [60-3] ¶ 1 [hereinafter "DSMF"].)  Plaintiff was hired effective February 8,

1990 to work in Defendant's warehouse facilities as a Warehouse Assistant. (DSMF ¶ 2; Pl.'s Stmt. of Mat. Facts [82-1] ¶ 1 [hereinafter "PSMF"].)  During his employment, Plaintiff received generally favorable employment reviews, and in 2001, was elevated to the position of Inventory Manager in 2001, where he continued to receive overall positive evaluations.  (DSMF ¶ 13, PSMF ¶¶ 2-10, 12, 14-19.)

In October 2003, Plaintiff suffered an arm injury while at work.  (DSMF ¶27; PSMF ¶ 22.)  Plaintiff returned to work in December of that year in the same position under medical restrictions.  (DSMF ¶ 28; PSMF ¶¶ 24-25.)  As a result of his injury, on April 26, 2004, Plaintiff's physician assigned him a 20% permanent partial disability rating to the right arm.  On June 9, 2004, however, for reasons not in the record, this rating was changed to reflect a 50% permanent partial disability.  (PSMF ¶¶ 26-27.)

While Plaintiff was employed as an Inventory Manager, Defendant restructured its warehouse operations, electing to change from a "shop through" system where partners would physically walk through the warehouse and select their items from the shelves, to a computerized "pull order" system where partners browse available inventory online, select their items, and set an

2

appointment time to pickup their order.  (DSMF ¶¶ 17-20.)  Based on this

change in its operations, Defendant elected to reorganize its staff involved in

inventory distribution.  (DSMF ¶ 31; Def.'s Mot. for Summ. J., Ex. E.)  As a

result of this reorganization, Plaintiff's position of Inventory Manager was

restructured to require a greater skill set and more responsibility.  (DSMF ¶¶

32-33.)  On November 10, 2004, all employees were invited by email to apply

for any of the positions in which they were interested.  (See Def.'s Mot. for

Summ. J., Ex. E.)  Plaintiff applied for two positions, the restructured Inventory

Manager position, as well as a Distribution Supervisor position.  (DSMF ¶ 34;

PSMF ¶¶ 41-42.)  On November 15, 2004, Plaintiff was informed that he did

not receive the restructured Inventory Manager position, but was offered the

Distribution Supervisor position instead.  (DSMF ¶ 43; PSMF ¶¶ 47-48.)  The

Distribution Supervisor position paid approximately $7,500 less than he had

previously earned in his prior position as Inventory Manager.  (PSMF ¶ 49.)

Two days after informing Plaintiff that he had not been selected for the

restructured Inventory Manager position, and after Plaintiff had voiced

displeasure with his new position, and specifically his reduced salary,

Defendant's Executive Director, Robert Bolling, received an anonymous phone

call from an agency partner, who turned out to be Sandra Lang.[1]  (DSMF ¶ 50.)

She informed Mr. Bolling that Plaintiff and another employee, David Buggs,

had offered to sell her a pallet of laundry detergent for cash.  (DSMF ¶ 51.)

With Mr. Bolling listening on the line, Ms. Lang initiated a call to David

Buggs.[2]  (DSMF ¶ 57.)  During this conversation, Mr. Buggs arranged for Ms.

Lang to pick up the detergent at the side door of the Food Bank and instructed

her that Plaintiff was aware of the transaction, and that she should give the

money to Plaintiff in the event Mr. Buggs was not present.  (DSMF ¶¶ 57-58.)

After discussing the matter, Mr. Bolling and other of Defendant's managers

decided to alert the police, who initiated an investigation.  (Bolling Depo. at 44-

45.)

_____

[1] Ms. Lang signed a sworn statement on February 16, 2005 which extensively details her involvement with the circumstances surrounding Plaintiff's arrest and subsequent termination.  On March 6, 2006, counsel for Defendant subpoenaed Ms. Lang to be deposed in this case.  She failed to appear at her deposition, however, apparently because she feared that she would be physically harmed if she testified in this case.  (See Prodgers Aff. [21-6] ¶¶ 6-7.)  Defendant then moved to compel her appearance, and this Court granted Defendant's motion, and ordered Ms. Lang to appear and be deposed.  (See Order of April 19, 2006 [27] at 2.)  Ms. Lang appeared as ordered, and testified that although she believes the content of her statement was "written in truth," she has absolutely no recollection of the events described in her statement.  (See generally Lang Depo. [23].)

[2] David Buggs served as Floor Supervisor at the time of the events in question, and was eventually terminated based upon these same events.   (DSMF ¶ 53.)

On the morning of November 18, 2004, Ms. Lang arrived at Defendant's warehouse and employees under Plaintiff's direct supervision loaded one pallet of detergent onto Ms. Lang's truck as agreed.  (DSMF ¶ 59.)  After the pallet of detergent was loaded, Ms. Lang then handed Plaintiff an envelope containing cash, which he accepted.  (DSMF ¶ 60.)  Police officers, who were waiting on site, then approached Plaintiff and placed him under arrest on charges of theft by conversion.  (DSMF ¶¶ 63-70.)  On November 19, 2004, Plaintiff appeared in the Magistrate Court of Fulton County, Georgia, however, because the prosecuting officer did not appear to testify, and the district attorney's office was not provided with information regarding Plaintiff's case, the charges against him were summarily dismissed.[3]  (DSMF ¶ 75; PSMF ¶ 58; Dorsey Depo. at 255-56.)  On the same day, Plaintiff was informed by Defendant's Human Resources Manager, Traron Moore, that his employment had been terminated.  (DSMF ¶ 76.)  Seven days after his arrest and termination, Plaintiff filed a formal charge with the Equal Employment Opportunity Commission

---

[3] Despite their efforts to contact the investigating officer, members of Defendant's management were not informed regarding the date or time of Plaintiff's preliminary hearing, and thus, did not appear to testify.  (See, e.g., Bolling Depo. at 58.)

("EEOC"), alleging discrimination based on disability.  (See Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. W [82-23].)

On November 17, 2005, Plaintiff initiated this action in the Superior Court of Fulton County, Georgia, alleging, inter alia, that his non-selection for the restructured Inventory Manager position and subsequent termination violated his rights under the Americans with Disabilities Act ("ADA").[4] Defendant properly removed the action to this Court and, after discovery, now moves for summary judgment.  The Court turns now to resolve Defendant's Motion.

## Discussion

## I.    Preliminary Matters

Before turning to the merits of Defendant's Motion for Summary Judgment, the Court addresses two preliminary matters.  First, Defendant has

---

[4] In Plaintiff's Complaint, as amended, he alleges (1) violations of his rights under the ADA; (2) retaliation in violation of Title VII; (3) false imprisonment; (4) malicious arrest; (5) malicious prosecution; (6) defamation; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) willful and malicious conduct sufficient to warrant the imposition of punitive damages.  On July 26, 2006, however, Plaintiff voluntarily dismissed all claims except those for violations of the ADA and punitive damages.

filed a Motion for Oral Argument regarding its Motion for Summary Judgment. The Court has reviewed the filings in this case, and finds oral argument to be unnecessary to the proper resolution of Defendant's Motion.  Accordingly, Defendant's Motion for Oral Argument [85] is **DENIED**.  Second, Defendant has filed a Motion to Strike in which it requests that this Court strike the EEOC's determination letter which Plaintiff filed in response to Defendant's Motion for Summary Judgment.  Plaintiff has not responded to Defendant's Motion to Strike,[5] and accordingly, that motion is **GRANTED as unopposed**.

## II.      Defendant's Motion for Summary Judgment

### A.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] In his Response to Defendant's Motion for Summary Judgment, Plaintiff does argue that the EEOC determination letter is admissible into evidence.  (See Pl.'s Br. in O'ppn to Def.'s Mot. for Summ. J. [83] at 4.)  However, Defendant's Motion to Strike, which was filed after Plaintiff's responsive brief, raises issues in addition to whether, as a general matter, EEOC determination letters are admissible in discrimination cases, and Plaintiff has offered no opposition to those additional objections to the Court's consideration of the letter.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.  In determining a motion for summary judgment, the court must view all evidence and draw all

8

reasonable inferences in the light most favorable to the non-moving party.

Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the

court is bound only to draw those inferences which are reasonable. "Where the

record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no genuine issue for trial."  Allen v. Tyson Foods, Inc.,

121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538

(1986)).  "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal

citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party

has met its burden under Rule 56(c), the nonmoving

party "must do more than simply show there is some metaphysical doubt as to

the material facts.").

> **B.**     **Plaintiff's ADA Claim**

"The ADA mandates that employers shall not discriminate against 'a

qualified individual with a disability because of the disability of such individual

in regard to job application procedures, the hiring, advancement, or discharge of

AO 72A
(Rev.8/82)

employees, employee compensation, job training, and other terms, conditions, and privileges of employment.' " Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999) (quoting 42 U.S.C. § 12112(a)).  Where, as here, the plaintiff does not rely on direct or statistical evidence to prove discrimination, "[t]he familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims."  Id.  Therefore, Plaintiff bears the burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  Id.  To make out a prima facie case of discrimination under the ADA, Plaintiff must demonstrate that (1) he has a disability, or was perceived to have a disability; (2) he is qualified for the position with or without reasonable accommodations; and (3) he was subjected to unlawful discrimination because of his disability.  Rossbach v. City of Miami, 371 F.3d 1354, 1358-59 (11th Cir. 2004); Carruthers v. BSA Adver., Inc. 357 F.3d 1213, 1215 (11th Cir. 2004); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997).  If Plaintiff meets his initial burden of establishing a prima facie case, a presumption of discrimination is created.  Wascura v. City of S. Miami, 257 F.3d 1238, 1242 (11th Cir. 2001).  The effect of the presumption of discrimination is to shift to the employer the burden of

10

producing a legitimate, nondiscriminatory reason for the challenged employment action.  Id.  If the defendant carries its burden of production, the presumption of discrimination is eliminated, and Plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing his prima facie case, sufficient to permit a reasonable factfinder to conclude that Defendant's proffered reasons were not the real reasons for the adverse employment decision, but rather were pretext for discrimination. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  If Plaintiff fails to come forth with sufficient evidence of pretext, however, then Defendant is entitled to summary judgment.  Id.

      1.      Disability Under the ADA

As explained above, to establish the first element of his prima facie case Plaintiff must show that he had a "disability" or was perceived to have a "disability" at the time of his termination.  Defendant contends that Plaintiff cannot make out a prima facie case of discrimination because Plaintiff has

11

failed to establish that he suffers from a disability within the meaning of the

ADA.  The Court agrees.[6]

The ADA defines "disability" as (1) "a physical or mental impairment

that substantially limits one or more of the major life activities of such

individual"; (2) "a record of such impairment;" or (3) "being regarded as having

such an impairment."  42 U.S.C. § 12102(2).  Thus, to qualify as disabled under

_____

[6] Plaintiff substantially relies on the EEOC's determination that Defendant violated the ADA to establish his prima facie case, arguing that "[t]he findings of the EEOC conclusively establish a prima facie case of discrimination." (Pl.'s Br. in O'ppn. to Def.'s Mot. for Summ. J. [83] at 4.)  Plaintiff's reliance is misplaced.  First, Defendant has moved to exclude the EEOC determination letter from evidence.  In light of Plaintiff's failure to file a response or otherwise indicate any opposition to Defendant's filing, that motion has been granted as unopposed.  See supra.  Therefore, the EEOC letter is not properly before the Court for purposes of Defendant's Motion for Summary Judgment. Second, even if it is considered, this Court is not bound by the EEOC determination.  See Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir. 1972) (explaining that EEOC determinations are "in no sense binding on the district court").  That determination is not a substitute for the well-established analytical framework applicable to ADA claims, and it is not sufficient evidence, in and of itself, to survive a properly supported motion for summary judgment.  The EEOC determination letter is conclusory and does not directly address whether Plaintiff suffers from a disability within the meaning of the ADA.  Although the letter concludes that Plaintiff was demoted and discharged "based on his disability," it does not identify which of Plaintiff's major life activities is substantially limited by his impairment, or what evidence the agency considered in concluding that Plaintiff was disabled.  In view of these patent failings, the EEOC determination letter is insufficient to establish that Plaintiff suffers from a disability.  See, e.g., Wright v. Columbia Women & Children's Hosp., 34 Fed. App'x 151 (5th Cir. 2005) (affirming summary judgment against employee despite EEOC determination letter that found reasonable cause to believe that employer had unlawfully discriminated, because letter was conclusory and not supported by summary judgment evidence).

AO 72A
(Rev.8/82)

the first part of the ADA's definition of disability, a plaintiff must initially prove that he or she has a physical or mental impairment.[7] <u>Toyota Motor Mfg., Kentucky Inc. v. Williams</u>, 534 U.S. 184, 194, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).  To qualify as disabled under the ADA, it is not enough, however, to merely have an impairment.  Rather, a plaintiff must demonstrate that the impairment "substantially limits a major life activity."  <u>Id.</u> at 195; 42 U.S.C. § 12102(2)(A).  " 'Major' in the phrase 'major life activities' means important." <u>Williams</u>, 534 U.S. at 197.  The phrase "major life activities" therefore refers to "those activities that are of central importance to daily life."  <u>Id.</u>   Similarly, the word "substantial" in the phrase "substantially limits" "suggests 'considerable' or 'to a large degree,' " and thus, "clearly precludes impairments that interfere in only a minor way with the [major life activity] from qualifying as disabilities."  <u>Id.</u>  The Supreme Court has stressed that these terms are to be "interpreted strictly" to create a "demanding standard" for qualifying as disabled under the ADA.  <u>Id.</u>

---

[7] Plaintiff does not contend either that he had a record of an impairment which substantially limits a major life activity, or that Defendant regarded him as having such an impairment.  Accordingly, the Court need not consider whether Plaintiff qualifies as disabled within the meaning of 42 U.S.C. § 12102(2)(B)-(C).

13

Applying this framework, courts considering whether an individual is disabled under the ADA engage in a three-step analysis.  <u>Rossbach</u>, 371 F.3d at 1357 (citing <u>Bragdon v. Abbott</u>, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)).  First, the court must assess whether the plaintiff is indeed impaired.  If so, then the court must proceed to the second step and identify the life activity that the plaintiff claims has been limited and determine whether it qualifies as a major life activity under the ADA.  <u>Id.</u>  Third, if the plaintiff establishes a limitation in a major life activity, then the court must determine whether the impairment "substantially limits" the major life activity in question. <u>Id.</u>

a.      <u>Impairment</u>

In this case, Plaintiff suffered an injury to his upper arm while at work, and Defendant does not dispute that Plaintiff has an impairment.  (<u>See</u> Def.'s Mem. in Supp. of Mot. for Summ. J. [60-2] at 5.)  As such, the Court proceeds to the second step of the inquiry.

b.      <u>Major life activity</u>

Plaintiff contends he is substantially limited in his ability to perform

14

manual tasks, arguing that "there is no dispute that [Plaintiff] could not lift or operate equipment as he had prior to his accident."[8]  (See Pl.'s Br. in Opp. to

_____

[8] Plaintiff additionally quotes certain testimony from Mr. Moore, one of Plaintiff's supervisors, wherein he stated that Plaintiff was limited in his ability to do warehouse work, and later suggests that he is substantially limited in his ability to work.  (See Pl.'s Br. in O'ppn to Def.'s Mot. for Summ. J. at 9-10.)  Insofar as Plaintiff's papers could be read to argue that he is substantially limited in the major life activity of working, such an argument fails on the present record.

The Supreme Court has reserved judgment on the question of whether working is properly considered a major life activity, Williams, 534 U.S. at 200; however, binding authority in this Circuit holds that it should be considered as such.  See Carruthers v. BSA Advertising, 357 F.3d 1213, 1216 (11th Cir. 2004).  To show disability based upon a substantial limitation in work activity, Plaintiff must demonstrate that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."  29 C.F.R. § 1630.2(j)(3)(i); Carruthers, 357 F.3d at 1216.  As the Supreme Court has explained:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Sutton v. United Airlines, Inc ., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).  Assuming without deciding that "warehouse work" qualifies as a "a class of jobs," Plaintiff's contention that he is substantially limited in his ability to perform work, warehouse or otherwise, is belied by the evidence.  It is undisputed that Plaintiff returned to his previous "warehouse" position at the Atlanta Community Food Bank after his injury, and Plaintiff testified in his deposition that he worked in multiple warehouse positions subsequent to his termination, and currently is employed as a car salesman.  (See Dorsey Depo. Vol. I [38] at 5-9.)  In view of this testimony, any claim that Plaintiff is substantially limited in his ability to perform warehouse work must be rejected.

15

Def.'s Mot. for Summ. J. [83] at 8.)  Certainly, Plaintiff is correct that

performing manual tasks constitutes a major life activity.  See Rossbach, 371

F.3d at 1357;  45 C.F.R. § 84.3(j)(2)(ii) (defining major life activities as

"functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning and working"); 29 C.F.R. § 1630.2

(same).  That said, Plaintiff's papers contain only a cursory discussion of the

major life activity requirement, and focus specifically on lifting and operating

machinery as particular manual tasks with respect to which Plaintiff is

substantially limited.  The Supreme Court has explained, however, that when an

individual claims to be disabled based upon a substantial limitation on his/her

ability to perform manual tasks, the activities so limited must be of the type that

are "of central importance to most people's daily lives." Williams, 534 U.S. at

198.  Neither lifting nor operating heavy machinery satisfy this requirement,

and thus, neither constitutes a major life activity in and of itself.  See, e.g., Carr

v. Publix Super Mkts., Inc., 2006 WL 267133, *7 n.3 (11th Cir. 2006) ("[W]e

doubt that a lifting limitation states a per se ADA disability.") (unpublished

opinion); cf. Nuzum v. Ozark Auto. Distribs., Inc., 432 F.3d 839 (8th Cir.2005)

(explaining that although lifting may be designated as major life activity, after

16

Williams finding of disability turns not on a particular motor ability limitation, but on the net effect of the limitation on the set of activities that are of central importance to most people's daily lives); Corley v. Department of Veterans Affairs, 2007 WL 512513, *6 (10th Cir. 2007) (unpublished decision) ("operating machinery is not a major life activity"); Kim v. Potter, 460 F. Supp. 2d 1194, 1200 (D. Haw. 2006) (operating heavy machinery, in and of itself, is not major life activity).  Moreover, Plaintiff has not adduced any evidence that lifting and operating machinery together constitute a major life activity.  See Williams, 534 U.S. at 197 ("If each of the tasks included in the major life activity of performing manual tasks does not independently qualify as a major life activity, then together they must do so.").  As such, viewing the evidence in a light most favorable Plaintiff as the Court is bound to do at this stage of the litigation, a limitation on Plaintiff's ability to lift and operate heavy machinery is insufficient to establish that Plaintiff is limited in the major life activity of performing manual tasks.

### c.    Substantial limitation

Even assuming that Plaintiff has established that he is limited in the major life activity of performing manual tasks, Defendant is entitled to

summary judgment because Plaintiff has failed to adduce evidence sufficient to allow a reasonable finder of fact to conclude that his limitation is substantial.  In <u>Williams</u>, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that <u>prevents or severely restricts</u> the individual from doing activities that are of central importance to most people's daily lives." <u>Williams</u>, 534 U.S. at 198 (emphasis added).

In this case, Plaintiff testified in his deposition that his physical limitations consist of being unable to lift more than 30 pounds "on a consistent basis," or 40 to 45 pounds "once or twice," and numbness in three fingers. (Dorsey Depo. Vol. I [38] at 9.)  Plaintiff has not pointed the Court to any evidence tending to show how those limitations "prevent or severely restrict" him from doing "activities that are of central importance to most people's daily lives." <u>Williams</u>, 534 U.S. at 198.  Thus, Plaintiff's evidence is insufficient as a matter of law to establish that he is substantially limited in the major life activity of performing manual tasks.

One final point warrants mention.  Plaintiff relies heavily on his doctor's assessment of his injury.  Specifically, Plaintiff argues that "there is no dispute .

18

. . that Mr. Dorsey was assigned a 50% partial disability rating for the injury to his arm," that "[b]y definition, this impairment is, in fact, permanent," and that "the impairment is such that it reduces the use of his arm by 50%—clearly a severe impairment, and one which hinders his ability to work or engage in physical activity." (Pl.'s Br. in O'ppn to Def.'s Mot. for Summ. J. at 9-10.) But, "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual," and thus, must be assessed on a "case-by-case" basis. Williams, 534 U.S. at 198; see also Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 566, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999) ("Courts must conduct a carefully individualized inquiry into a plaintiff's claimed disability in order to fulfill their statutory obligation to determine the existence of disabilities on a case-by-case basis."). Consistent with this rule, and fatal to Plaintiff's claim insofar as it relies merely on the doctor's assessment, the Supreme Court has expressly held that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Williams, 534 U.S. at 198. Because, as discussed above, Plaintiff has not pointed to any

evidence which demonstrates that he has personally been prevented or severely restricted from performing activities of central importance in his life, the evidence of his doctor's diagnosis and assessment cannot support his claim of disability under the ADA.

In sum, because Plaintiff has failed to adduce sufficient evidence that he is substantially limited in a major life activity as a result of his impairment, no reasonable jury could find that he is disabled within the meaning of 42 U.S.C. § 12102(2).  Defendant is therefore entitled to judgment as a matter of law on Plaintiff's ADA claim.  Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

## Conclusion

For the reasons stated herein, Defendant's Motion for Oral Argument [85] is **DENIED**;  Defendant's Motion to Strike [90] is **GRANTED as unopposed**; and Defendant's Motion for Summary Judgment [60] is **GRANTED**.

20

**SO ORDERED** this   14th   day of March, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)